UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JAMES D. ATWOOD,

      Plaintiff,

    v.                                    Civil No. 09-6207-HA

                                        OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

HAGGERTY, District Judge:

      Plaintiff James Atwood seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits (DIB). This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

1- OPINION AND ORDER

**FACTS**

Plaintiff was fifty-four years old at the alleged disability onset date and was fifty-nine years old at the time of the ALJ's decision. Plaintiff has a high school education and past relevant work experience as a journeyman lineman.

Plaintiff protectively applied for DIB on May 12, 2004, alleging disability from mental and physical impairments. The application was denied initially and upon reconsideration. The ALJ conducted a hearing on November 15, 2006, at which he heard testimony from plaintiff, who was represented by counsel, and a vocational expert (VE).

On March 30, 2007, the ALJ issued a decision finding that plaintiff was not disabled as defined in the Social Security Act. The Appeals Council declined plaintiff's request for administrative review, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently initiated this action seeking judicial review.

**STANDARDS**

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Additionally, for the purposes of DIB, a plaintiff has the burden of proving disability prior to the termination of his or her insured status. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four to establish his or her disability. At the fifth

2- OPINION AND ORDER

step, however, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, so long as one of the interpretations supports the decision of the Administrative Law Judge (ALJ). *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998). However, a decision

supported by substantial evidence must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720.

## SUMMARY OF ALJ'S FINDINGS

At step one, the ALJ found that plaintiff had not engaged in SGA since his alleged disability onset date. Tr. 43, Finding 2.[1]

At step two, the ALJ found that plaintiff has the following medically determinable severe impairments: post-traumatic stress disorder (PTSD), dysthymia, and marijuana abuse. Tr. 43, Finding 3.

At step three, the ALJ found that plaintiff's impairments, singly or in combination, did not meet or equal the requirements of any listed impairment. Tr. 44-45, Finding 4. Because the ALJ determined that plaintiff's impairments were not presumed to be disabling, the ALJ was required to determine plaintiff's RFC, which is the most an individual can do in a work setting despite the total limiting effects of all their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p.

In determining plaintiff's RFC, the ALJ found that plaintiff is unable to "interact appropriately with the public in other than superficial or occasional contact; [unable] to engage in ongoing cooperative, collaborative teamwork endeavors; and [unable] to tolerate exposure to loud noises, such as explosions and unpredictable flashes, like being outside in a lightning storm." Tr. 45, Finding 5.

At step four, the ALJ found that plaintiff is unable to perform his past relevant work. Tr. 48, Finding 6.

---

[1] Tr. refers to the Transcript of the Administrative Record.

4- OPINION AND ORDER

At step five, the ALJ found that in light of plaintiff's RFC, age, education, and work experience, jobs exist in significant numbers in the national economy that plaintiff could perform. Tr. 49, Finding 10. The ALJ consulted with a VE in making this determination. *Id.*

**DISCUSSION**

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for further findings or for an award of benefits due to a number of errors including: (1) improperly rejecting lay witness testimony; (2) improperly rejecting plaintiff's testimony; (3) failing to give weight to the Veteran's Administration disability finding; (4) improperly rejecting Dr. Rex Turner's opinion and (5) improperly finding that plaintiff can perform "other work" existing in the national economy.

**1.    Lay witness testimony**

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account, unless [the ALJ] expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). When an ALJ errs by failing to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006).

If lay testimony is controverted by the medical evidence presented, the ALJ does not err by ignoring that lay testimony. *Timmons v. Comm'r of Soc. Sec.*, 546 F. Supp. 2d 778, 795-96 (E. D. Cal. 2008) (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). However, if the lay testimony is consistent with the medical evidence, then the ALJ must consider it and comment upon it. *Id.* (citing *Stout*, 454 F.3d at 1053).

5- OPINION AND ORDER

The ALJ considered the statement submitted by plaintiff's wife, Carol Atwood. Tr. 48. The ALJ explained that Mrs. Atwood's testimony regarding plaintiff's daily activities supported a finding that plaintiff can perform a wide variety of tasks if given accommodation. *Id.* However, the ALJ rejected Mrs. Atwood's testimony regarding plaintiff's difficulties with memory, concentration, and completing tasks because they were not confirmed by the objective medical record. Tr. 48.

The ALJ's stated reason for rejecting Mrs. Atwood's testimony about plaintiff's mental difficulties was inadequate. An ALJ may properly discredit lay witness testimony where it conflicts with the medical evidence. *Lewis*, 236 F.3d at 511. However, the ALJ cannot discredit lay witness testimony solely because the claimant's medical records are silent regarding the restrictions described by the lay witness. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)). If the ALJ's decision to reject the testimony is based on a lack of objective medical evidence—as the ALJ did in this case—then the ALJ committed reversible error. *Id.*

Mrs. Atwood's statement lists plaintiff's PTSD symptoms as "memory impairment, detached, irritable, angry, can't concentrate." Tr. 138A. She explained that plaintiff "can go into an almost coma like state when depressed," and poorly handles stress, changes in routine, and authority figures. Tr. 138A-39. These observations are at least partially confirmed by the objective opinions of Dr. Northway, Dr. Krueger, and Dr. Turner. Tr. 214, 220, 258. The ALJ's failure to consider Mrs. Atwood's testimony regarding the severity of plaintiff's mental impairments cannot be construed as harmless. This court cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1053.

6- OPINION AND ORDER

**2.      Plaintiff's testimony**

Plaintiff asserts that he is unable to sustain employment due to his "intrusive memories, and difficulties in social functioning without significant conflicts, anxiety, and agitation," and that the ALJ erred when he rejected plaintiff's testimony. Pl.'s Br. at 14. This court agrees.

An ALJ need not believe every allegation of disabling pain or functional limitation advanced by a claimant. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Instead, a two-step analysis applies at the administrative level when considering a claimant's subjective credibility. At step one, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom," and "if the claimant meets this threshold and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1281-84); s*ee also* SSR 96-7p ("[The ALJ's decision] must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").

The ALJ may consider many factors in weighing a claimant's credibility, including ordinary techniques of credibility evaluation (such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid) and inadequately explained failures to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284.

A claimant's statements cannot be rejected solely because the testimony is viewed as unsubstantiated by the available objective medical evidence. 20 C.F.R.§§ 404.1529(c)(2); 416.

7- OPINION AND ORDER

929(c)(2). However, if the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

In this case, no substantive evidence of malingering was presented. The ALJ instead relied upon plaintiff's daily activities and plaintiff's decision to stop working due to an enhanced retirement plan. Tr. 47-48.

Plaintiff testified that his daily routine includes: reading the newspaper, drinking coffee, and working around the house, in the garage, or on his vehicles. Tr. 397. Plaintiff is responsible for all bill paying and household expenses. Tr. 126. Plaintiff testified that he prepares meals for his family, does laundry, washes dishes, sweeps, mops, and vacuums. Tr. 125. Plaintiff occasionally cuts and chops wood. Tr. 400. Plaintiff also shops for groceries, but generally avoids contact with people at the store. Tr. 405.

Plaintiff believes that he can occasionally stand or walk for six hours out of an eight hour day, and can lift fifty pounds. Tr. 401. He complained about back pain, and tries to be careful when he works around the house or chops wood. Tr. 400-01.

Plaintiff asserts that his flashbacks and anxiety hinder his ability to concentrate, finish projects, and interact with others. Tr. 396-97, 399. Plaintiff's flashbacks are triggered by diesel exhaust fumes, helicopter sounds, and other loud noises that remind him of combat. Tr. 219-20. Plaintiff testified that he generally takes multiple breaks during the day to refocus and occasionally (three to four times per month) needs day-long breaks. Tr. 397-99.

Plaintiff reports anxiety from interactions with strangers, and explains that he must withdraw socially to avoid confrontations or increased anxiety. Tr. 220. Plaintiff also reports conflicts with supervisors because of his mental impairments. Tr. 399. He attributes his conflicts with coworkers and supervisors to his status as a Vietnam veteran. *Id.*

8- OPINION AND ORDER

Plaintiff's daily activities do not provide specific, clear and convincing reasons for discounting his testimony. Although he is unlimited by exertional restrictions, his non-exertional restrictions severely limit his interaction with coworkers and supervisors. This finding is supported by Dr. Northway's opinion that plaintiff is capable of managing most activities of daily living, but cannot work "cooperatively or collaboratively with others without significant conflicts, anxiety, and agitation." Tr. 220.

The ALJ also discredited plaintiff's credibility because plaintiff left work for non-disability-related reasons. Plaintiff testified that he stopped working because his employer offered him an early retirement plan. Tr. 393, 405. Plaintiff explained that he had "had enough" of the hazards of the job, including loud explosions and lightning. Tr. 405. He believed that his experience as a Vietnam veteran put him at risk for having bad reactions to the hazardous conditions. Tr. 406.

Doctor Northway reported that "[plaintiff] believes part of the reason he had to retire early . . . was because he was no longer able to smoke marijuana to cope with the daily stressors of work and his PTSD symptomatology." Tr. 220. Even though plaintiff may have had some financial incentive to retire, plaintiff's testimony consistently demonstrates that he accepted early retirement at least partially because of his PTSD. The ALJ's stated reasons for discrediting plaintiff's testimony are insufficient.

### 3.   Veteran's Administration determination

Plaintiff was initially denied Veteran's Administration (VA) benefits for his PTSD in 2000. Tr. 48, 101. However, plaintiff's claim was reopened and he was awarded VA benefits on February 14, 2004. Tr. 101. The VA evaluated plaintiff as "100 percent," demonstrating evidence of total occupational and social impairment. Tr. 102.

9- OPINION AND ORDER

An ALJ must ordinarily give great weight to a VA determination of disability. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, the criteria for a VA disability rating are not identical to those required for DIB. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009).

The ALJ may give less weight to the VA rating only if he provides "persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (citation omitted). If the ALJ properly discredits an opinion that the VA determination relied on, or reviews additional new evidence that the VA did not, then the ALJ has given adequate reasons for rejecting the VA's disability rating. *Id.*

Here, the ALJ specifically considered plaintiff's receipt of benefits in his disability analysis pursuant to *McCartey*. Tr. 48. The ALJ explained that he received evidence that was not available during the VA determination, including medical reports, plaintiff's testimony, and testimony from a VE. Tr. 48. This court finds that the ALJ's review of the new evidence provides a sufficient basis for not following the VA's disability determination. Upon remand, however, plaintiff may seek renewed consideration of the VA determination.

**4.    Medical opinion of Dr. Turner**

An ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and may reject an uncontradicted opinion from a treating or examining physician by providing clear and convincing reasons, supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments. *Lester v. Chater*, 81 F.3d 821, 832-33 (9th Cir. 1995) (citation omitted).

10- OPINION AND ORDER

In December 2003, Dr. Turner examined plaintiff for a compensation and pension report. Tr. 250-59.  Plaintiff received a "normal limits score," with no indications of cognitive impairments or decompensation, and a Global Assessment of Functioning (GAF) score of 46. Tr. 255-57.  In his report, Dr. Turner noted that plaintiff's self-reports of PTSD symptoms were corroborated by the medical opinion of plaintiff's treating physician, Dr. Holly Krueger.  Tr. 256.

Following his review of plaintiff's medical records, cognitive testing, and physical examination of plaintiff, Dr. Turner diagnosed plaintiff with chronic, severe PTSD with a poor prognosis for improvement.  Tr. 256-57.  The doctor noted that plaintiff had poor family functioning, extremely limited social/interpersonal relationships, and that plaintiff's functioning was significantly/severely compromised by his PTSD.  Tr. 255-57.

Similarly, Dr. Krueger found that plaintiff felt extremely anxious at work, did not connect interpersonally with coworkers, and is emotionally detached from his family.  Tr. 208, 214.  She diagnosed plaintiff with chronic PTSD and assigned him a GAF score of 60.  *Id.*

The ALJ did not mention Dr. Turner's report, but instead referenced its exhibit number in his step two findings.  Tr. 43-44.  Although the ALJ did not specifically discuss Dr. Turner's report, the ALJ reviewed and cited Dr. Turner's report in his opinion.  *Id.*

The ALJ also specifically credited Dr. Krueger's medical opinion in his determination that plaintiff suffered from severe impairments.  Tr. 43.

After reviewing the records, this court finds that Dr. Krueger's report is nearly identical to Dr. Turner's diagnosis and observations of plaintiff.  Both reports provide similar assessments about plaintiff's capabilities.  If any error existed due to the ALJ's failure to discuss Dr. Turner's opinion, it was harmless error.  *See Tommasetti*, 533 F.3d at 1038 (explaining that the court shall not reverse for harmless error when the ALJ's error was inconsequential to the ultimate finding

11- OPINION AND ORDER

of no disability). However, upon remand, the ALJ shall consider and address Dr. Turner's opinion.

5.      **Step five analysis**

Plaintiff argues that the Commissioner failed to prove that plaintiff can perform other work at step five of the disability analysis. This court is confident that this issue will be addressed properly during further proceedings.

As noted above, once a claimant shows that he cannot perform past relevant work, the burden shifts to the Commissioner to show that the claimant can engage in SGA. The Commissioner "can meet this burden by propounding to a vocational expert a hypothetical question that reflects all the claimant's limitations." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). The ALJ must then determine whether the claimant can find work in the national economy. The ALJ's determination must be supported by substantial evidence. *Tackett*, 180 F.3d at 1097.

Here, the VE testified that plaintiff could not perform his past work as a lineman, which was skilled, medium exertional work. Tr. 414-15. The VE stated that plaintiff could perform other work, including electrical assembler (DOT 729.384-026), electric meter assembler (DOT 721.684-022), and appliance assembler (DOT 723.684-010)—all light semi-skilled work. Tr. 415. The VE explained that plaintiff had transferable skills such as his use of hand and power tools, electrical assembly, electrical theory, and knowledge of electrical materials. *Id.*

Plaintiff's attorney then asked the VE whether "an individual [who] could not work cooperatively or collaboratively with others without significant conflicts, anxiety, and agitation," would be able to perform the identified work. Tr. 416. The VE testified that he understood "no cooperative work" to mean that the hypothetical person could not withstand any interaction with

12- OPINION AND ORDER

others, and explained that minimal contact with others and the ability to accept supervision are universal job expectations required in any position. Tr. 416, 418. The VE clarified that if the hypothetical worker had a marked limitation in his ability to deal with coworkers and supervisors, then the worker would be precluded from the identified jobs. Tr. 420-22.

Based on the VE's testimony, if the ALJ had adequately credited plaintiff's testimony and Mrs. Atwood's testimony, then plaintiff could not perform the jobs identified. The VE, however, did not specify whether plaintiff is precluded from all work, or just the jobs he identified in his testimony. Upon remand for further proceedings, the ALJ may solicit further clarification from a VE.

**6.     Remand**

A remand for further proceedings is unnecessary if the record is fully developed, and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In this matter, this court concludes that outstanding issues remain that must be resolved before a determination of disability can be made.

Upon remand, the ALJ shall evaluate plaintiff's testimony, Mrs. Atwood's testimony, and Dr. Turner's opinion in accordance with the guidance above. The ALJ shall also question a VE in conformity with plaintiff's mental limitations as described by plaintiff and Mrs. Atwood, and renew a full step five analysis.

**CONCLUSION**

For the reasons provided, this court concludes that pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner denying James Atwood's application for disability benefits must be REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this  23  day of September, 2010.

                                                  /s/ Ancer L. Haggerty
                                                    Ancer L. Haggerty
                                            United States District Judge